# SUPREME COURT — SPECIAL TERM — ONONDAGA COUNTY.

## April, 1919.

# THE PEOPLE ex rel. VIRGILO MULTER v. BLOSSOM MULTER.

### (107 Misc. 58.)

HABEAS CORPUS*—WRIT OF, TO DETERMINE RIGHT TO CUSTODY OF INFANT DAUGHTER DENIED—INFANTS—HUSBAND AND WIFE—CONSTITUTION OF THE UNITED STATES.

The basic principle in determining the right to the custody of a child of tender years is, what is for the best interest of the child.

Upon habeas corpus to determine the right of a father to the custody of his seven-year-old daughter, it appeared that the parents since their marriage in 1911, have had considerable marital trouble. In November, 1918, the mother, with the knowledge and consent of the father, who bought the tickets and put her and the child on the train, came to the home of the wife's parents in Syracuse, N. Y., where they have ever since continuously resided. The father, having on January 25, 1919, wired from Boston that he was very sick, his wife immediately went to him and found that he was not seriously ill. On January twenty-seventh they returned to the home of her parents, occupying the same berth on the way, the same room at night as husband and wife until January twenty-ninth, and on the last day of said month he instituted the present proceedings. *Held,* that an interlocutory order of the Probate Court of Massauchusetts awarding relator the custody of the child, based on a claim that he and his wife were living separate and apart, was not within the "full faith and credit" clause of the Constitution of the United States, was not conclusive of the rights of the parents, and the conditions having since changed, was no longer in force or operative.

Where apart from any rights of the relator under said order it clearly appears that he is not a suitable person to have the custody of any one, much less the child whose proper rearing requires nourishment and assistance other than that of paternity and the language of an interloctutory

---

* See notes, Vol. 15, p. 152; Vol. 23, p. 55.

judgment, and the moving papers strongly suggest that relator is not actuated by a desire for the welfare of his child as much as by a desire to annoy her mother, the writ will be denied with costs.

HABEAS CORPUS proceeding for the possession of an infant.

*Chapman, Newell & Crane (Harry E. Newell, of counsel),* for relator.

*M. E.* and *G. W. Driscoll (George W. Driscoll, of counsel),* for defendant.

Ross, J.:

The questions in this case arise upon a *habeas corpus* proceeding to determine the right of the relator to the custody of Jane Ormsbee Multer, an infant aged seven years, child of the relator and defendant. The parties to this proceeding are husband and wife and were married in May, 1911, since which time they have had more or less trouble, more rather than less. It would serve no useful purpose to narrate the marital troubles disclosed by the moving papers. The defendant from time to time has resided with her parents in the city of Syracuse and has so continuously resided since the latter part of November, 1918, during which time she has had the custody of her infant daughter. The defendant's coming to Syracuse at the time last mentioned was with the knowledge and consent of the relator; he bought the tickets and put the defendant and his child on the train.

On January twenty-fifth last past the relator wired deponent from Boston that he was very sick and to come at once. She immediately left Syracuse and went to Boston and found that he was not seriously ill. They returned to Syracuse on the twenty-seventh of January, occupying the same berth from Boston to Syracuse, went to the house of deponent's father where she resides and the relator remained there during the

twenty-eighth until the twenty-ninth, occupying the same room at night as husband and wife, and on the thirty-first of January the relator commenced these proceedings.

The relator bases his right to the custody of the child not only upon his parental relation but upon a judgment or order made by the Probate Court in the State of Massachusetts, which his attorney, with commendable earnestness insists is *res adjudicata.* The Massachusetts Statute (R. L. Mass., ch. 153, § 37), which gives the Probate Court of that State jurisdiction, reads as follows: " If the parents of minor children live separately, the probate court shall have the same power, upon the petition of either parent, to make decrees relative to their care, custody, education and maintenance, as relative to children whose parents are divorced; and shall determine which of the parents of such children shall be entitled to such custody in accordance with the law relative to the custody of children whose parents have been divorced."

Chapter 152 " Of divorce " of the Revised Laws of Massachusetts provides with other matters in relation to the care and support of children as follows:

" Section 25. Upon a decree of divorce, or upon petition at any time after such decree, the court may make such decree as it considers expedient relative to the care, custody and maintenance of the minor children of the parties, and may determine with which of the parents the children or any of them shall remain; and afterward may from time to time, upon the petition of either parent, revise and alter such decree or make a new decree, as the circumstances of the parents and the benefit of the children may require."

" Section 28. In making an order or decree relative to the custody of children pending a controversy between their parents, or relative to their final possession, the rights of the parents shall, in the absence of misconduct, be held to be equal, and the

happiness and welfare of the children shall determine their custody or possession."

On the 28th of December, 1917, the relator presented a petition to the Probate Court in and for the county of Middlesex, Mass., asking that he should be awarded the custody and possession of the said child and stated in the petition that he and the defendant are living apart from each other.

On the 11th day of June, 1918, the following order was made by said court after reciting the issuing of the petition and service of the same and contained the following:

"It is ordered that the said Virgilo Multer have custody and possession of said minor child until the further order of the Court, and that the said Blossom Multer shall have the privilege of visiting and seeing such minor child during said reasonable periods of time, and also having such child in her custody within the Commonwealth not less than two days in each month.

"GEORGE F. LAWTON,

"Judge of the Probate Court."

It is the contention of the relator that the aforesaid order is of that character, that it is within the "full faith and credit" requirement of the United States Constitution, art. 4, § 1, and is conclusive of the rights of the parents.

It is contended by the defendant that the order of the Probate Court of the State of Massachusetts was simply interlocutory, an order rather than a final decree; that the order made by the Probate Court if it ever had any force or effect is no longer operative because it was based upon the claim of the relator that the relator and defendant were living apart, and that by his subsequent conduct, the parties having become reconciled and lived together, the conditions under which the order was made in the Probate Court were changed and the order is no longer in force or operative.

No question becomes res adjudicata until it is settled by a final judgment. The doctrine does not apply to an interlocutory

order.    (See Freeman Judg. [1st ed.], §§ 251, 325; Riggs v.
Pursell, 74 N. Y. 370-378; Brinkley v. Brinkley, 50 id. 184;
Munn v. Cook, 8 N. Y. Supp. 698.)

I am convinced that the defendant's contention is correct.
The authority of the Probate Court is that it " shall determine
which of the parents of such children shall be entitled to such
custody in accordance with the law relative to the custody of
children whose parents have been divorced."

Section 25, Revised Laws of Massachusetts (*supra*), pro-
vides that the court may make such decree as it deems expedient
relative to the care, custody and maintenance of the minor
children of the parties, " and may determine with which of the
parents the children or any of them shall remain; and after-
ward may from time to time, upon the petition of either parent,
revise and alter such decree or make a new decree, as the cir-
cumstances of the parents and the benefit of the children may
require."    It thus appears that the Probate Court was without
power to make a final decree which would for all time fix the
status of the child.    Suppose that either of these parties had
brought an action for an absolute divorce in a court in Massa-
chusetts having jurisdiction of the parties and the subject mat-
ter of the action, can it be contended for a moment that upon a
final decree in said court that it would be bound by the order
made in the Probate Court, especially if the court having juris-
diction in the supposed case should find that the facts were
either entirely different, or had substantially changed from the
time that the order was made in the Probate Court?    The
burden of proof is upon the party claiming an estoppel by a
former judgment to show clearly that the fact in issue was
determined in the former action.    (Zoeller v. Riley, 100 N. Y.
102.)

In the case of People ex rel. Ludden v. Winston (34 Misc.
21, affd., 61 App. Div. 614), cited by the counsel for the relator
the judge states: " To a certain extent at least the order of the

Court of Chancery of New Jersey is to be regarded as an adjudication as to the proper custody of the child, and while, of course, such a question must always be determined upon the state of facts existing when the question arises, so that there may be successive adjudications as to the proper custody of the same child, * * * ." And the other cases cited by the counsel for the relator hold that the principle of *res adjudicata* applies to a decision as to the custody of a child on a writ of *habeas corpus, while the facts remain the same.* In this case the facts have not remained the same but are entirely different. When the order was made in the Probate Court the relator stated in his petition that they were living separate and apart, which statement was jurisdictional. Since that time they have lived together and were living together comparatively a few hours before the application herein was made, the custody of the child with the mother and the grandparents was acquiesced in by the relator and he is or should be estopped from invoking the protection of an order upon an entirely different state of facts. In determining the right to the custody of a child the question that is paramount to all other considerations is the welfare of the child whose custody is sought by the relator. The duties of deciding these questions are frequently difficult and painful but the principle which is basic is what is for the best interest of the child.

The case of Lynde v. Lynde (162 N. Y. 405) is instructive on this connection. This was an action brought to recover alimony awarded to the plaintiff by a decree of the Court of Chancery in the State of New Jersey, in which it was held that the courts of this State would enforce the New Jersey decree and give it full credit and effect as a judicial debt of record against the defendant for the amount fixed at the time of the rendition, but would not attempt to enforce such foreign decree for the payment of alimony which thereafter accrued which remains subject to the discretion of a foreign court. And Judge

GRAY, speaking for the court, on page 418, quotes from the opinion of the Chancellor in the New Jersey suit as follows: " The statute exhibits an intention that the subject shall be continuously dealt with according to the varying condition and circumstances of the party." And continues, " The provision of the Federal Constitution, which requires that full faith and credit should be given to the judicial proceedings of another state, in my opinion, should be deemed to relate to judgments, or decrees, which not only are conclusive in the jurisdiction where rendered, but which are final in their nature."

In the judgment rendered by the New Jersey court there was a final determination as to the right to and the amount of alimony and yet because the continuance of this provision rested in the discretion of the trial court to be determined according to the varying conditions and circumstances of the parties the courts of this State, as expressed in the above citation, refused to give it force and effect within the full faith and credit clause of the United States Constitution. It seems to me that the principles of this case apply with marked emphasis to the varying conditions and circumstances which may determine the right to the custody of a child.

The decision in the Lynde case was made in 1900; in 1904, chapter 318, section 1772 of the Code of Civil Procedure was amended presumably to meet the decision in that case. (See opinion of MILLER, J., in Moore v. Moore, 143 App. Div. 428-431.) But such amendment, while it enlarges the power of the courts in this State to enforce a foreign decree in a divorce action in no way interferes with the principles of the Lynde case as to matters not covered by statute.

Apart from any rights which the petitioner may have under the Massachusetts order the task of determining upon the facts presented what is best for the welfare of the child is a very easy matter. The defendant, the mother, is living in this city with her parents, reputable people, the child is attending school, is

carefully and affectionately cared for both by her mother, the defendant, and by her grandparents, and the home and surroundings are exceptionally good. In addition to this it appears that the mother came to her present home with the knowledge and consent of the petitioner. He came here and stayed with her the day and night before he commenced these proceedings. While on the other hand the husband, the father, has no home to which he can take his child, and the whole history of their marital difficulties, as presented in the papers, tends strongly to show that the father is not a suitable person to have the custody of anybody much less the rearing of a daughter of the tender years of the child in question. And the facts disclosed by the moving papers strongly suggest that the husband and father in this case is not actuated by a desire for the welfare of the child as much as by the desire to annoy the mother. The proper rearing of a child of the tender years and sex of the one under consideration requires some other nourishment and assistance than that rendered by the mere fact of paternity and the language of an interlocutory judgment.

The writ denied with costs to the defendant against the relator pursuant to the provisions of the Code of Civil Procedure, § 3240.    (See People ex rel. Curtis v. Kidney, 225 N. Y. 299.)

Ordered accordingly.