514

STATE OF TENNESSEE ex rel. W. W. HARDISON et al.

*v.*

CITY OF COLUMBIA, TENNESSEE, et al.

STATE OF TENNESSEE ex rel. MRS. R. O. LUNA et al.

*v.*

CITY OF COLUMBIA, TENNESSEE, et al.

STATE OF TENNESSEE ex rel. CLAUDE LOVE et al.

*v.*

CITY OF COLUMBIA, TENNESSEE, et al.

STATE OF TENNESSEE ex rel. BILL MORROW et al.

*v.*

CITY OF COLUMBIA, TENNESSEE, et al.

STATE OF TENNESSEE ex rel. BURTON HARRIS et al.

*v.*

CITY OF COLUMBIA, TENNESSEE, et al.

360 S.W.2d 39.

(*Nashville,* December Term, 1961.)

Opinion filed September 7, 1962.

516

J. Shelby Coffey, Jr., Thomas E. Humphrey, Jr., W. A. Richardson, Columbia, for appellants.

Queener & Courtney, Columbia, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

These consolidated cases involve five City Ordinances which annexed certain territories to the City of Columbia. Since the cases all involved the same question and almost an identical factual situation they were consolidated and tried together. The Chancellor heard oral proof, and at the conclusion of the proof and other legal matters presented, which will hereinafter be referred to,

decided that the annexations in each instance were valid and dismissed the bills. The petitioners in each of these suits have seasonably appealed, filed able briefs, and arguments have been heard. We, after reading this two volume record consisting of some 570 pages of proof and pleadings, reading the briefs and studying the authorities, have the matter for disposition.

The historical background of the necessity of these annexation ordinances, as viewed from the City's standpoint, is identical with that set forth in a' prior case, styled *State ex rel. Senff v. City of Columbia,* 208 Tenn. 59, 343 S.W.2d 888. That background will not again be set out here.

To all intents and purposes the assignments of error and questions presented in the present litigation have been heretofore determined by this Court in *Morton v. Johnson City,* 206 Tenn. 411, 333 S.W.2d 924; and *City of Knoxville v. State ex rel. Graves,* 207 Tenn. 558, 341 S.W.2d 718. There are two questions presented in this present litigation that have not heretofore been presented in any decision so far as we are advised. These two questions will be discussed and acted upon while the other questions more or less will be very briefly discussed so as to show the applicability of the two cases which have decided these questions, cited supra.

The five ordinances attacked by these various proceedings were passed on a third and final reading on December 1, 1960, by the City fathers. The suits were filed within thirty days thereafter. Supplemental bills were filed in May, 1961, setting forth an amendment to the annexation statute, which had been passed by the 1961 Legislature, and which became effective March 17,

1961, and is carried as the second paragraph to sec. 6-309, found in the Cumulative Supplement to the Code. These supplemental bills were demurred to and the Chancellor sustained the demurrers. This, of course, was excepted to and is one of the two new questions raised in this lawsuit. There will be more about it later.

The suits were then put at issue by answer, and proof was heard pro and con *ore tenus* by the Chancellor. After hearing this proof he said in part:

"* * * Under the decisions of the Supreme Court in order to prevail in this case on the merits the petitioners have the burden of showing that the annexation is not reasonable in relation to the public safety, health and welfare of the inhabitants of the municipality and the areas sought to be proposed, and that further the question is not ever debatable. The City of Columbia and its municipal contiguous territories constitute a thriving metropolitan area whose population has more than doubled since 1940. The areas sought to be annexed in this case are contiguous to the territory of the City of Columbia they contain approximately 522 houses, approximately 1827 people and approximately 405 vacant lots. Many of the inhabitants of the territory sought to be annexed are employed either in Columbia or in industrial areas contiguous to the City of Columbia. The City proposes to offer within the what the Court considers to be a reasonable time a more sanitary method of garbage collection than the disputed areas now has access to. The City proposes to offer what the Court considers within a reasonable time fire protection superior to that now enjoyed by the inhabitants of the annexed

areas. The City offers street lights upon the request of the inhabitants of the annexed areas. And the Court finds that the City has a plan, a comprehensive plan for a sewerage system to serve the annexed areas and that this plan can reasonably be expected to be given effect within a reasonable time.''

■ After carefully reading this record we are convinced that not only is the fact question of the necessity of this annexation a fairly debatable question, but it seems to us that the weight of the evidence clearly preponderates in favor of the reasonableness and necessity of these ordinances. It is true that there is testimony of individuals to the contrary but when this proof is shown it clearly leaves at most a reasonably debatable question. Thus, under *Morton v. Johnson City,* supra, this question is foreclosed.

■ It is argued very forcibly, and there are numerous witnesses who testify as to what public hearing was allowed the inhabitants on the question of the adoption of these ordinances. The proof shows that there were some hundred to a hundred and twenty-five people present and all that wished to speak were given an opportunity to say their piece with the possible exception of one man, who jumped up so frequently he was asked to keep quiet. About the only worry or questions of these witnesses at this public hearing was that the City fathers failed to answer their questions. Legally such an answer was not necessary at the time, but politically (a question that we have no right to suggest or pass on) it might have been better to have given an answer. Regardless of this fact, this record conclusively shows a sufficient answer to these various questions was given in the testimony in

these consolidated cases. The public hearing here lasted from 7:30 until after 9:00 o'clock with a possible break of fifteen or twenty minutes at 8:00 o'clock. This though was a fact question and the Chancellor very correctly held that there had been ample notice and ample opportunity for a hearing. These cases present a stronger case than did the same question when raised in *Morton v. Johnson City* supra.

■ It is next very ably argued at the bar of this Court that the action of the City fathers in enacting these ordinances was an arbitrary act in that they fixed a line at a certain distance around the City and then attempted to annex to meet this line. It is true that one of the Commissioners did make that statement on cross-examination by counsel for the petitioners. This witness though when explaining what he meant by that says that before they had any meeting just in discussing it, standing around the courthouse, somebody made that suggestion, but the proof shows by this witness and others that such an arbitrary action was not taken and that the annexation ordinances were done after consideration and deliberation, and it was not an arbitrary action.

■ Then, the question is presented here that the City fathers should have submitted the questions of the feasibility and advisability of adopting these ordinances to the Municipal Planning Commission as is mentioned in sec. 6-314, T.C.A. The Charter of the City of Columbia makes no mention of such referrals to a planning commission, and this Court has answered the question here raised in *City of Knoxville v. State ex rel. Graves*, supra. In that case we held that this reference, or referral to a planning commission, was not at that time mandatory

but it was discretionary only. There is no error in this question.

■ It is very forcibly argued that these ordinances were void "on the ground that residents and citizens of the annexed area involved would not have had the rights and privileges of citizens in representation on the governing body of the City of Columbia required by statute, sec. 6-315, immediately upon the annexation." This identical question was answered by this Court in *City of Knoxville v. State ex rel. Graves,* supra, wherein this Court said:

"So, while such residents and property owners are entitled to the rights and privileges of the citizenship of the City, immediately upon an annexation, they, of course, cannot be entitled to such rights before annexation takes effect; nor do we think they can maintain that the ordinance must contain, as a condition precedent to its validity, a provision setting up such rights for them. There is nothing in the statute to warrant such construction. * * *

"Certainly we cannot declare the ordinance void on the assumption that the City Council will not do their duty. The presumption is that they will do it."

Thus it is seen that this question is logically, clearly and amply answered and we see no earthly reason to change it.

The two new questions presented herein are, first, as heretofore set forth, the amended and supplemental bills raise the question that the ordinances were void because they had not been submitted to the local planning commission as is required by the second paragraph, sec. 6-309, T.C.A., which reads:

"Provided, however, that before any territory more than one-fourth ($\frac{1}{4}$) square mile in area or having a population of more than five hundred (500) persons may be annexed under this section, the governing body of the municipality shall adopt a plan of service setting forth at a minimum the identification and projected timing of municipal services proposed to be extended into the territory proposed to be annexed. Provided, further, that before any such plan of service shall be adopted, it must have been submitted to the local planning commission, if there be such, for study and a written report, to be rendered within ninety (90) days after such submission, unless by resolution of the governing body a longer period is allowed."

██ This amendment to the Code which was relied upon in this supplement bill became effective on March 17, 1961. The ordinances in question became final on December 1, 1960. Thus it was that the Chancellor sustained the demurrer to the effect that since the ordinances had been passed long before the amendment above quoted was passed, that it was not necessary that these ordinances comply with this legislative amendment. There was nothing in the amendment which in any way shows that it was intended to be retroactive, that is, apply to ordinances passed before its passage, and thus it was that the Chancellor held that this amendatory legislation had no application to these ordinances. It is a well settled general legal proposition that an act of the Legislature is given a prospective and not a retroactive force unless the retroactive force is plainly expressed or necessarily implied by the act. *Dowlen v. Fitch,* 196 Tenn. 206, 264 S.W.2d 824, 266 S.W.2d 357, 41 A.L.R.2d 791; 82 C.J.S. Statutes secs. 415, 421, pages 990, 996. Of course, what

we look to in a statute is the intent of the Legislature, and it is our duty, unless such intent plainly appears, to give the act prospective application rather than retrospective. See Sutherland Statutory Construction, 3rd Ed., Vol. 2, sec. 2201, page 114. In other words, it is the court's duty to strictly construe a statute against retrospective operation and in favor of prospective operation. The present Act quoted from the Code is Chapter 320 of the Acts of 1961, and by reference to this Act it clearly shows that it is to take effect only after its passage. This Act does not deal with a change of judicial practice or procedure but obviously it was enacted after the *Morton v. Johnson City* case, which is a leading annexation case and others which came along after it, some reported and some not, to try in some way to strengthen and give a little broader application to city annexation by referring any future annexations after the enactment of this statute to the planning commission who were, and are, presumed to be professionals in the field. Counsel for the appellants, petitioners, cited casebook and judicial decisions relating to modes of judicial procedure wherein statutes governing the question of judicial procedure passed after an accident happens, or something of the kind, are applicable to the trial of a case which happened before the act was passed. These though present an entirely different question from that here in question. This Act does not change the judicial practice or procedure. Of course, procedure in this sense, or procedure at law, is a judicial process adopted in this country for enforcing the rights and duties which are recognized by substantive law. Sutherland, supra, Vol. 3, sec. 5704, page 74. The statute here in question is merely setting forth an addition to the substantive law of annexation as to what is required by the

City fathers before enacting these annexation ordinances. It in no way affects the procedural policy of the law. If what was done at the time these ordinances were passed was valid, this statute in no sense attempts to make what was valid and had been done before invalid. It merely applies to the future and not to the past.

The second and last question raised was to the introduction of an ordinance passed by the City in reference to the proposed services to be rendered to these annexed areas. This ordinance was offered as an exhibit to the evidence of the City Recorder and objected to by the petitioners. The ordinance shows on its face that it was passed by the City subsequent to the legislative Act last above referred to and set forth in the face of the ordinance that the City Attorney advised the City fathers that it was not necessary for them to submit this annexation under these ordinances to the planning commission. but that in an effort to comply wholeheartedly with the legislative intent the ordinance was passed wherein it was set forth that they proposed to furnish the different city requirements of water, fire protection, sewerage, etc., and the time they intended to get it done for these different areas. The objection to this ordinance was that nowhere in the bills or answers was it shown that they intended to rely on this evidence as to when and where these various things would be respectively furnished. In the first place this ordinance is more or less an answer, as we see it from this evidence herein, of what the various people were asking the City fathers at the public hearing. The bills alleged that they could not furnish these services in the foreseeable future, and, of course, everything else that could be properly averred in such a bill, therefore it seems clear to us that such a resolution was in effect

really an answer by the City Council to all the questions that had been asked, and the allegations made in the various bills. It seems to us that clearly the resolution was admissible to show what the Council in a meeting had planned and proposed to do to meet the requirements of the new addition to the City when annexed.

Thus it is, after careful consideration of the entire matter here presented we find no error and consequently affirm the decree of the Chancellor.

TOMLINSON, JUSTICE (Ret.), did not participate herein.